Sidney Squire, J.
Over two years ago I wrote a memorandum in Coratti v. State of New York (61 Misc 2d 928, 929, 930) re proposed decisions which “ were inordinately excessive; too many swarming in impropriety.” I commented that “ None of the foregoing is a thought original with me.” There followed quotations from earlier opinions enunciating the requirements of subdivisions (a) and (b) of CPLR 4213 and the precursor section 440 of the Civil Practice Act.
It is regrettable to note that there continues to be a burdensome lack of compliance with statutory and judicial declarations. Last month, in two separate memoranda, a colleague of mine wroteA substantial number of Findings submitted by the attorneys have been marked ‘ Improper In Form ’, not because the facts contained therein are inaccurate but because they contain only evidentiary matters, not the ultimate facts to be found *754 based upon the evidence.” (Levco Constr. Corp. v. State of New York, dated Jan. 18, 1972, Claim No. 49440; Lane Constr. Corp. v. State of New York, dated Jan. 24,1972, Claim No. 51210.)
At bar, the defendant’s proposed decision impels comment. Too many portions of the 40 proposed findings of fact were prolix and argumentative, language was obscure, the subject of a sentence was omitted, modifying phrases were misplaced, and much thereof belonged in a brief rather than in proposed findings.
Other examples abound; e.g., there is no respectable support for the usage of ‘ ‘ Moreover ” or “ It is also true that ” in a proposed finding of fact. A paragraph has three references to “ doodling ” which appeared on an exhibit. Such evidentiary matter is scarcely an essential fact to be contained in a decision (CPLR4213, subd. [b]).
Were such references looked upon with favor by the courts, claimant’s counsel would have been justified in requesting a finding concerning “ cribbing ” by the defendant’s expert. The trial record discloses that within a few minutes after his direct interrogation was begun, I asked the witness to tell us what was written on the palm of his hand at which he was looking while answering questions. He frankly stated on record what was written on the palm of his hand to help refresh his recollection. (I had not seen such an incident in over 50 years. That occurred on a written test during my first year at high school when I had observed a similar performance by a classmate.)
The expert’s conduct was surprising in the light of the 62 pages of data in his beautiful and expensively bound appraisal report and his office file of papers, all of which were available in the witness box to refresh his recollection.
At bar, I do believe that this witness personally did the work about which he testified. In many other trials, my colleagues and I have grave doubts as to whether some expert witnesses have personal knowledge of the facts to which they are swearing.